**JOHN C. ELLIS, JR.**
California State Bar No. 228083
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

Attorneys for Martin Orosco-Ibarra

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**MARTIN OROSCO-IBARRA**,<br><br>　　　　　Defendant. | Case No. 08CR1261-LAB<br><br>DATE:　　June 2, 2008<br>TIME:　　2:00 p.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

The following statement of facts is based on materials received from the government. Mr. Orosco-Ibarra does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

Mr. Orosco-Ibarra was arrested on March 23, 2008. On April 22, 2008, the government filed a one count indictment charging a violation of 8 U.S.C. § 1326.

These motions follow.

///

///

///

///

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

(1) <u>The Defendant's Statements</u>. The government must disclose to the defendant <u>all</u> copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; <u>see id.</u>, any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any <u>Miranda</u> warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)[1]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed "to protect the defendant's rights to a fair trial." <u>United States v. Rodriguez</u>, 799 F.2d 649 (11th Cir. 1986); <u>see also</u> <u>United States v. Noe</u>, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

(2) <u>Arrest Reports and Notes</u>. The defendant also specifically requests that the government turn over all arrest reports, notes and TECS records not already produced that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. <u>See</u> Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); <u>see also</u> <u>United States v. Anderson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming <u>Harris</u>' holding).

---

[1] Of course, any of Mr. Orosco-Ibarra's statements, which are exculpatory, must be produced, as well. <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

      (3)    <u>Brady Material</u>.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case.  <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).  Under <u>Brady</u>, <u>Kyles</u> and their progeny, impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused.  <u>See also</u> <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).  This includes information obtained from other investigations which exculpates Mr. Orosco-Ibarra.

      (4)    <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>.  The government must also produce this information under <u>Brady v. Maryland</u>.  This request includes any cooperation or attempted cooperation by the defendant, as well as any information, including that obtained from other investigations or debriefings, that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

      (5)    <u>The Defendant's Prior Record</u>.  The defendant requests disclosure of his prior record.  Fed. R. Crim. P. 16(a)(1)(B).

      (6)    <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for which introduction is sought.  This applies not only to evidence which the government may seek to introduce in its case-in-chief, but also to evidence which the government may use as rebuttal.  <u>See</u> <u>United States v. Vega</u>, 188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce surprise," preclude "trial by ambush" and prevent the "possibility of prejudice."  <u>Id.</u>; <u>United States v. Perez-Tosta</u>, 36 F.3d 1552, 1560-61 (11th Cir. 1994).  Mr. Orosco-Ibarra requests such reasonable notice at least two weeks before trial so as to adequately investigate and prepare for trial.

      (7)    <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

(8) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects, and any evidence seized from the defendant or any third party in relation to this case.

(9) <u>Henthorn Material</u>. Mr. Orosco-Ibarra requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>United States v. Lacy</u>, 896 F. Supp. 982 (N.D. Ca. 1995). At a minimum, the prosecutor has the obligation to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

(10) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(C). Specifically, to the extent they were not already produced, the defendant requests copies of all photographs in the government's possession, including, but not limited to, the defendant and any other photos taken in connection with this case.

(11) <u>Expert Witnesses</u>. The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(E). The defense requests that notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions and credentials of the government's expert. The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert. See <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . ..").

1   (12)   <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

   (13)   <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>.

   (14)   <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

   (15)   <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

   (16)   <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes are subject to Jencks Act).

   (17)   <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

1    (18)   Agreements Between the Government and Witnesses. In this case, the defendant requests identification of any cooperating witnesses who have committed crimes, but were not charged, so that they may testify for the government in this case. The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about, or advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to United States v. Sudikoff, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests all statements made, either personally or through counsel, at any time, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

(19)   Informants and Cooperating Witnesses. To the extent that there was any informant, or any other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Orosco-Ibarra-Herrera. The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20)   Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(21)   Inspection and Copying of A-File. Mr. Orosco-Ibarra requests that this Court order the government to make all A-Files relevant to Mr. Orosco-Ibarra available for inspection and copying.

1    (22)    <u>Residual Request</u>.  Mr. Orosco-Ibarra intends, by this discovery motion, to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  Mr. Orosco-Ibarra requests that the government provide his attorney with the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE ALL ELEMENTS OF THE CHARGED OFFENSE

The indictment must be dismissed because the government has failed to properly allege all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .."  Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "<u>fully, directly, and expressly, without any uncertainty or ambiguity</u>, set forth all the elements necessary to constitute the offense intended to be punished."  <u>United States v. Carll</u>, 105 U.S. 611, 612-13 (1881) (emphasis added).  It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed.  <u>See, e.g.</u>, <u>Russell v. United States</u>, 369 U.S. 749, 769-72 (1962); <u>Stirone v. United States</u>, 361 U.S. 212, 218-19 (1960); <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999); <u>United States v. Keith</u>, 605 F.2d 462, 464 (9th Cir. 1979).

In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b).  In <u>United States v. Salazar-Lopez</u>, 506 F.3d 748, 751 (9th Cir. 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal.  In this case, the indictment only alleges that Mr. Orosco-Ibarra "was removed from the United States subsequent to May 14, 2004."  The indictment does not allege either that this "removal" occurred subsequent to a conviction or allege a specific date of the prior removal.  Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

Moreover, the indictment fails to allege the following elements necessary to convict Mr. Orosco-Ibarra of the offense: that Mr. Orosco-Ibarra knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States.  As a consequence, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001);  United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).[2]

### IV.
### DISMISS THE INDICTMENT BECAUSE IT VIOLATES MR. OROSCO-IBARRA'S RIGHT TO PRESENTMENT.

Mr. Orosco-Ibarra has a Fifth Amendment right to have a grand jury pass upon those facts necessary to convict him at trial.  In the indictment, the government included the language:  "It is further alleged that defendant MARTIN OROSCO-IBARRA, was removed from the United States subsequent to May 14, 2004."[3]  The indictment in this case violates Mr. Orosco-Ibarra's right to presentment in two ways.  First, the language added by the government does not ensure that the grand jury actually found probable cause that Mr. Orosco-Ibarra was deported after May 14, 2004, as opposed to simply being physically removed from the United States.[4]  Second, that the grand jury found probable cause to believe that Mr. Orosco-Ibarra was removed "subsequent to May 14, 2004" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

---

[2] These issues were decided against Mr. Orosco-Ibarra in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004).  However, these issues remain open in the Supreme Court.  To reserve these issues for further review, Mr. Orosco-Ibarra incorporates the arguments made by the defendant in Rivera-Sillas. If the Court wants full briefing on these issues, Mr. Orosco-Ibarra will provide it.

[3] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).  In Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been removed from the United States following a conviction. As indicated above, however, this language, however, does not cure the problems with this indictment.  Should sentencing become necessary, Mr. Orosco-Ibarra will file further briefing on this issue.

[4] Interestingly, the government has not provided any deportation documents to defense counsel.  It is defense counsel's understanding that the government did not have these documents prior to the case being presented to the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language: "It is further alleged that defendant Martin Orosco-Ibarra, was removed from the United States subsequent to May 14, 2004." There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States." See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.) As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before

the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the <u>type</u> of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Orosco-Ibarra. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the grand jury that Mr. Orosco-Ibarra was removed (in a colloquial sense), but offers proof at trial that Mr. Orosco-Ibarra was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial. See <u>Stirone v. United States</u>, 361 U.S. 212, 217-19 (1960). Either scenario represents a violation of Mr. Orosco-Ibarra's right to presentment. <u>Stirone</u>, 361 U.S. at 218-19.

A second problem with the indictment is that there is no indication which (if any) deportation the government presented to the grand jury. In most cases, the government will have a choice of deportations to present to the grand jury to support an allegation that a person had been deported after a specific date.[5] This renders it a very real possibility that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Orosco-Ibarra was removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr. Orosco-Ibarra's right to have the grand jury pass on all facts necessary to convict him would be violated. See <u>Du Bo</u>, 186 F.3d 1179.

## V.

## **MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

The above arguments to dismiss the indictment based on the government's failure to comply with Mr. Orosco-Ibarra's Fifth and Sixth Amendment rights is premised on <u>Covian-Sandoval</u> having read into section 1326 an additional element—a deportation that occurred at a particular time—that the government must plead to the grand jury and prove to a jury. To the extent the government argues that <u>Covian-Sandoval</u> did not create an additional element, the indictment contains surplusage. In other words, if the government argues that the <u>timing</u> of a person's deportation is not a element of section 1326, but rather a sentencing factor

---

[5] At this time, the government has only provided discovery on one alleged deportation.

1 under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the
2 Supreme Court has clearly held to be decided by a judge.

3       The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements
4 beyond what is required under statute is surplusage and need not be proved at trial." Bargas v. Burns,
5 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request
6 of the defendant. United States v. Fernandez, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the
7 government argues that the date of a person's deportation is not a required element of section 1326, the
8 indictment contains language beyond that which is necessary to convict Mr. Orosco-Ibarra of violating section
9 1326. If the date of a person's deportation is not an element of section 1326, then the language in the
10 indictment— "It is further alleged that defendant Martin Orosco-Ibarra, was removed from the United States
11 subsequent to May 14, 2004"—is surplusage. So too is the government's allegation in the indictment that
12 Mr. Orosco-Ibarra violated section 1326, subsection (b).

13       At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from
14 subsection (a). See United States v. Corona-Sanchez, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This
15 changed, however, following the Supreme Court's decision in Almendarez-Torres v. United States,
16 523 U.S. 224 (1998). See Corona-Sanchez, 291 F.3d at 1203. In Almendarez-Torres, the Supreme Court
17 decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge,
18 rather than a substantive offense. See id. Following Almendarez-Torres, the Ninth Circuit rethought the way
19 in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a
20 violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)
21 struck to "unambiguously reflect that the defendant was convicted of only one punishable offense
22 pursuant . . .." Id.

23       Although an allegation of a particular date of deportation would likely be an appropriate response
24 on the government's part to the holding of Covian-Sandoval, the government here has chosen to include in
25 the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326.
26 Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the
27 indictment. As Almendarez-Torres makes clear, however, Congress clearly intended findings under
28 subsection (b) of section 1326 to made by a judge, rather than a jury. Almendarez-Torres, 523 U.S. at 235

("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense).

Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (*en banc*) (discussing enhanced penalties under 21 U.S.C. § 841), it has not seen fit to overrule the Supreme Court's decision in Almendarez-Torres.  See, e.g., United States v. Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005).  For these reasons, to the degree the government argues that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the indictment an allegation that Congress intended to be decided by judge, rather than a jury.[6]  Therefore, pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Orosco-Ibarra moves to strike this surplusage from the indictment.

## VI.

### MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Orosco-Ibarra hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. CONST. AMENDS V & VI[7].  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii)

---

[6] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of section 1326 unconstitutional. In Covian-Sandoval, the Ninth Circuit held that a jury must determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum. Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme Court held that Congress intended subsection (b) to be a sentencing provision to be determined by a judge. Almendarez-Torres, 523 U.S. at 235.  It is thus clear that subsection (b), as written and construed by the Supreme Court, violates Apprendi.

[7] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law.  The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges.  'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956).  Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government.  It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings

allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Given the arguments raised above, and the fact that it appears that the government did not have any immigration documents at the time it presented this case to the grand jury, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii). Mr. Orosco-Ibarra requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Orosco-Ibarra to adequately prepare for trial and to perfect his appellate record. See id.

## VII.

## MOTION TO SUPPRESS STATEMENTS

Mr. Orosco-Ibarra moves to suppress his statements on the grounds of an invalid Miranda waiver and voluntariness. According to the government, Mr. Orosco-Ibarra was made a post-arrest statement.

**A.    The Government Must Demonstrate Compliance with *Miranda*.**

In order for any statements made by Mr. Orosco-Ibarra to be admissible against him, the government must demonstrate that they were obtained in compliance with the Miranda decision. The government must establish that Mr. Orosco-Ibarra's waiver of his Miranda rights was voluntary, knowing, and intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When interrogation continues without the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality of the circumstances surrounding the case. Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Garibay, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into

---

sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

1  whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and
2  the consequences of the decision to abandon it." Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564,
3  573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of
4  comprehension" before a court may conclude that Miranda rights have been legitimately waived. Id. (quoting
5  Colorado v. Spring, 479 U.S. at 573).  Unless and until Miranda warnings and a knowing and intelligent
6  waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used
7  against the defendant. Miranda, 384 U.S. at 479.  The government in this case must prove that Mr. Orosco-
8  Ibarra waived his rights intelligently and voluntarily.  Mr. Orosco-Ibarra disputes any allegation any waiver
9  was knowing, intelligent, and voluntarily.

**B.      Mr. Orosco-Ibarra's Statements Must Be Voluntary.**

Even if this Court determines that Mr. Orosco-Ibarra validly waived his Miranda rights, it must still make a determination that any statements are voluntary.  Under 18 U.S.C. § 3501(a), this Court is required to determine, whether any statements made by Mr. Orosco-Ibarra are voluntary.  In addition, section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Orosco-Ibarra understood the nature of the charges against him and whether he understood his rights.  Without such evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

## VIII.

## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

Mr. Orosco-Ibarra and defense counsel have received limited discovery in this case.  **Specifically, after viewing the a-file, Mr. Orosco-Ibarra will be filing a motion attacking the validity of his alleged deportation.**  Additionally, a s new information surfaces due to the government providing discovery in response to these motions, or an order of this Court, defense may find it necessary to file further motions, or

1 to supplement existing motions with additional facts. The denial of this motion will result in a violation, at
2 a minimum, of Mr. Orosco-Ibarra's Fifth and Sixth Amendment rights. Therefore, defense counsel requests
3 the opportunity to file further motions based upon information gained from discovery.

                                                Respectfully submitted,

5 DATED:        May 12, 2008                  *s/ John C. Ellis, Jr.*
                                                JOHN C. ELLIS, JR.
                                                Federal Defenders of San Diego, Inc.
                                                Attorneys for Martin Orosco-Ibarra
                                                john_ellis@fd.org